IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| J.S., C.S., and A.S., minors by and through their mother, S.S., | : | |
| Plaintiffs, | : | |
| v. | : | C.A. No. 15-876-LPS |
| RED CLAY CONSOLIDATED SCHOOL DISTRICT, | : | |
| Defendant. | : | |

## MEMORANDUM ORDER

Pending before the Court is the motion for a temporary restraining order or preliminary injunction filed by Plaintiffs, J.S., C.S., and A.S. ("Plaintiffs"). (D.I. 1) Having reviewed the parties' submissions (D.I. 2, 8, 11, 14), and heard oral argument yesterday (October 7, 2015), IT IS HEREBY ORDERED THAT Plaintiffs' motion (D.I. 1) is DENIED.[1]

1. By their motion, Plaintiffs seek an order requiring Defendant, Red Clay Consolidated School District ("Red Clay" or "Defendant"), to enroll Plaintiffs at Skyline Middle School ("Skyline") and to provide transportation to Skyline from their current residence, which is outside of Red Clay. (*Id.*) Plaintiffs are minors who, during the previous school year, attended school in Red Clay when they were living with their mother. (D.I. 3 at ¶ 1) Unfortunately, during the recent summer break, Plaintiffs' mother was placed on unpaid medical leave from her job, resulting in her being unable to pay rent and causing her to lose the

---

[1] All parties agree that it is imperative for the Court to make a decision as quickly as possible, in hopes of eliminating the ongoing uncertainty as to where Plaintiffs will attend school. Hence, the Court has moved expeditiously following the filing of this action on September 29 (D.I. 1) and will not take the time to write with any greater detail than is absolutely necessary.

1

apartment in Red Clay where she and Plaintiffs had lived during the previous school year. (*Id.*) Over the summer, Plaintiffs' mother took the children to live with their father, who lives in the Christina School District ("Christina"). (*Id.*) The father rents an apartment that he currently shares with four adults and one other child. (*Id.*)

2. While some of the facts are understandably a bit murky at this extremely early stage of the case, it appears that at a certain point during the summer the father enrolled Plaintiffs in Bayard Middle School ("Bayard") in Christina. (D.I. 9 at ¶¶ 5-6) Since the current school year began, Plaintiffs have attended Skyline for one day and Bayard for two weeks; otherwise, they have not attended school. (*Id.* at ¶¶ 9-10, 12) Most recently, apparently sometime last week, Plaintiffs' mother moved them from their father's residence to the residence of their godmother, which is located in the Colonial School District ("Colonial"). (D.I. 11-2)

3. Of crucial importance is the fact that Plaintiffs' mother and father share joint custody of the children. (D.I. 11, Ex. A) Sadly, the parents are not in agreement as to the best school for their children to attend. The mother wants Plaintiffs to attend Skyline (and there is indication that Plaintiffs themselves prefer Skyline) (*id.* at ¶¶ 11-15, 42), while the father wants them to attend Bayard (D.I. 9 at ¶ 14).

4. The Court has decided to deny the requested temporary restraining order and preliminary injunction because Plaintiffs have failed to meet their burden to show that they are entitled to the "extraordinary remedy" they seek. *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). In assessing Plaintiffs' request for this rarely-granted relief, the Court is required to consider four factors:

> (1) whether the movant has shown a reasonable probability of success on the merits; (2) whether the movant will be irreparably injured by denial of relief; (3) whether granting preliminary relief

2

will result in even greater harm to the nonmoving party; and (4)
whether granting the preliminary relief will be in the public
interest.

*Council of Alt. Political Parties v. Hooks*, 121 F.3d 876, 879 (3d Cir. 1997). If, as here, Plaintiffs fail to meet their burden to demonstrate a likelihood of success on the merits, a preliminary injunction is not warranted, "regardless of what the equities seem to require." *Adams v. Freedom Forge Corp.*, 204 F.3d 475 (3d Cir. 2000).

5. Plaintiffs have failed to establish that they are likely to succeed on the merits for several reasons. First, Plaintiffs' claim is predicated on the McKinney-Vento Homeless Education Assistance Improvements Act ("Act"), yet the Court is not persuaded that Plaintiffs became "homeless" under the Act when they moved in with their father in August. Section 11434a of the Act provides:

> (2) The term "homeless children and youths"—
>
> > (A) means individuals who lack a fixed, regular, and adequate nighttime residence (within the meaning of section 11302(a)(1) of this title); and
> >
> > (B) includes—
> >
> > > (i) children and youths who are sharing the housing of other persons due to loss of housing, economic hardship, or a similar reason . . . .

42 U.S.C. § 11434a(2)(B)(I). As an initial matter, it is unclear based on the current record whether Plaintiffs' mother's decision to let her children move in with their father meant that Plaintiffs lacked a "regular, fixed, and adequate nighttime residence" at the time of the move. This is particularly true in light of the suggestions in the record that Plaintiffs had previously spent some amount of time at their father's residence. (D.I. 9 at ¶¶ 3-4) Moreover, as demonstrated by the Court's exchange with Plaintiffs' counsel at the end of yesterday's hearing,

there is substantial ambiguity in the application of the statutory definition of "homeless children and youths" in this case, in particular with respect to who qualified as "other persons" when Plaintiffs moved in with their farther. Plaintiffs' counsel argued both that "other persons" in this case consists of the adults and child who share the father's housing (thereby implying that if the father had lived alone, Plaintiffs would not be "sharing the housing of other persons" and, thus, not be homeless), and, alternatively, that the father himself is an "other person[]" because Plaintiffs would not be living with him but for their mother's loss of housing or economic hardship.

6. At this stage, the Court agrees with Defendants that both of these interpretations appear to constitute an unprecedented expansion of the reach of the Act, since adopting either of Plaintiffs' proposals would potentially classify as "homeless" countless children who move from the home of one parent with joint custody to the home of another parent with joint custody. Plaintiffs' proposals would also appear to predicate the "homelessness" analysis in a joint custody situation on a possibly fine-grained inquiry into the specific motivations and causes of a shift in residential status as between joint custodial parents. At this point, the Court has been provided no persuasive basis for concluding that the protections afforded by the Act turn on (or are intended to turn on) such an inquiry by a federal court.

7. Further, even if Plaintiffs can ultimately convince the Court they are "homeless," they have not shown they are likely to succeed in establishing that the proper relief under the Act is admission and transportation to Skyline. Section 11432g of the Act provides:

> (3) Local educational agency requirements
>
> (A) In general
>
> The local educational agency serving each child or youth to

4

> be assisted under this part shall, according to the child's or youth's best interest—
>
>> (i) continue the child's or youth's education in the school of origin for the duration of homelessness—
>>
>>> (I) in any case in which a family becomes homeless between academic years or during an academic year; or
>>>
>>> (II) for the remainder of the academic year, if the child or youth becomes permanently housed during an academic year; ***or***
>>
>> (ii) enroll the child or youth in any public school that nonhomeless students who live in the attendance area in which the child or youth is ***actually living*** are eligible to attend.
>
> (B) Best interest
>
> In determining the best interest of the child or youth under subparagraph (A), the local educational agency shall—
>
>> (i) to the extent ***feasible***, keep a homeless child or youth in the school of origin, ***except when doing so is contrary to the wishes of the child's or youth's parent*** or guardian . . . .

42 U.S.C. § 11432g(3)(A) (emphasis added). Each of the highlighted portions of the statute appear at this juncture to pose hurdles that will likely prevent Plaintiffs from succeeding on the merits on their request for relief.

      8.      First, the ultimate relief the Act would entitle Plaintiffs to (should they prevail) is set out in alternatives, only one of which would be to return them to Skyline (assuming for the moment that Plaintiffs can prove that Skyline is the "school of origin"); alternatively, the Court could order that Plaintiffs need only be given the opportunity to attend a school that nonhomeless students also living "in the attendance area where the [homeless] child or youth is

*actually living*" attend. The "attendance area" where Plaintiffs are "actually living" is currently in Colonial, recently it has been in Christina, and it is uncertain where it will be when this case is resolved on the merits. Second, in formulating relief on the merits, the Court would be required to consider the "best interests" of the children, accounting for what is "feasible." Given the realities of Plaintiffs' parents' disagreement as to what is best for Plaintiffs, and the repeated moves they have had to endure already this school year, it is far from clear that the Court would be persuaded that it is in the "best interests" of Plaintiffs, and "feasible," to order Red Clay to transport them to Skyline. Finally, and more importantly, any statutory right to continued attendance at the school of origin (even assuming that is Skyline) is expressly subordinated to the wishes of the child's parent or guardian. Here, one of Plaintiffs' parents has unambiguously stated his preference that Plaintiffs *not* attend Skyline.

9. Separate from the failure to show likelihood of success on the merits, Plaintiffs have also failed to show that the public interest favors awarding the relief they seek. The Court is concerned that while Plaintiffs present their request under a federal statute, at essence what confronts the Court is a custody dispute between two parents who share joint custody over Plaintiffs. The Court is highly reluctant to address questions that are within the core competence and jurisdiction of the State of Delaware Family Court ("Family Court"). This is all the moreso given that there is at this very moment ongoing litigation between Plaintiffs' mother and father in Family Court. (D.I. 9 at ¶ 7) Particularly in the absence of any authority applying the Act to a situation in which two custodial parents disagree as to the preferred school for minor children to attend, the Court deems the interest in comity between federal and state courts to weigh heavily against exercising its discretionary authority in a manner that could interfere with those ongoing state court proceedings. *See generally Middlesex Cnty. Ethics Comm. v. Garden State Bar*

*Ass'n*, 457 U.S. 423, 434-37 (1982); *Smith v. Delaware*, 2009 WL 395227, at *2 (D. Del. Feb. 17, 2009) (citing *Middlesex* for proposition that "*Younger* abstention doctrine generally requires federal courts to abstain from adjudicating a matter where there are (1) ongoing state judicial proceedings, (2) implicating important state interests, and (3) in which there is an adequate opportunity to raise constitutional challenges").

10. Plaintiffs argue that the Act contains a provision that strongly favors, if not mandates, granting them the relief they seek during the pendency of the parties' dispute in this Court. This provision provides: "If a dispute arises over school selection or enrollment in a school . . . the child or youth shall be immediately admitted to the school in which enrollment is sought, pending resolution of the dispute." 42 U.S.C. § 11432(g)(3)(E)(i). The Court disagrees. The relief contemplated by the provision is that the child be admitted to "the school in which enrollment *is sought*." *Id.* (emphasis added). Here there is uncertainty as to the school at which enrollment is sought. Under these circumstances, it cannot be that the statute requires the Court on an expedited basis to decide where the children should attend school.

11. Given the Court's conclusions above, and in the interests of issuing this Order as soon as possible, the Court need not address the many remaining arguments raised by the parties. The Court has carefully considered each of them.

IT IS FURTHER ORDERED that:

A. The parties shall meet and confer and shall, no later than October 18, submit a joint status report, including their proposals for how this case should now proceed. The parties shall address, among any other issues they wish, whether this matter should be stayed until the earlier of (i) a decision from the Family Court pertinent to the issues raised in this case, or (ii) Plaintiffs' mother's return to work and return to housing of her own (potentially in Red

Clay).[2]

B. This Order has been issued under seal, just as the parties' filings to date have been filed under seal. The parties shall meet and confer and shall advise the Court in writing, no later than October 9, whether they request any redactions to this Order. The parties' filing may be under seal. Thereafter, the Court will issue a public version of this Order.

C. The parties shall file redacted versions of the filings to date no later than October 18.

October 8, 2015
Wilmington, Delaware

HONORABLE LEONARD P. STARK
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs' mother anticipates being permitted to return to paid status in around mid-November and hopes thereafter to move back to her home in Red Clay and have Plaintiffs attend school at Skyline. (D.I. 1, Ex. A at ¶ 15)